UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**RICHARD ALDEN WIARD** and
**KIMBRA LYN WIARD**,

Debtors.

Case No. **13-60094-7**

MEMORANDUM OF DECISION

At Butte in said District this 9th day of August, 2013.

Pending in this Chapter 7 case is the Debtors' Motion for Sanctions for Violation of the Automatic Stay ("Motion") (Docket No. 14), filed on April 12, 2013, seeking sanctions against David Brooks Rice ("David") and Gayla Rice ("Gayla") (together "Rices") under 11 U.S.C. § 362(k) for violation of the automatic stay when Rices contacted Mineral County, Montana officials to commence criminal charges against Debtor Richard Wiard after the date of filing of Debtors' petition. Rices filed a response in opposition, and a hearing on Debtors' Motion was held after due notice at Missoula on June 6, 2013, at the conclusion of which the Court granted the parties time to file briefs, after which the Court would take the Motion under advisement. The briefs have been filed and reviewed together with the record and applicable law. This matter is ready for decision. For the reasons set forth below Debtors' Motion for Sanctions will be denied because the commencement or continuation of a criminal action or proceeding against the debtor does not operate as a stay under § 362(b)(1).

Debtors were represented at the hearing by attorney Nik Geranios of Missoula, and

1

Debtor Richard Wiard ("Richard") testified. David and Gayla Rice both appeared and testified, represented by attorney Edward A. Murphy of Missoula. Exhibits ("Ex.") 1 - through - 6 and A - through - M were admitted by stipulation.

This Court has jurisdiction of this Chapter 7 case and contested matter under 28 U.S.C. § 1334(a). Debtors' Motion for sanctions for violation of the stay is a core proceeding under 28 U.S.C. § 157(b)(2). At issue in this case is whether Rices willfully violated the automatic stay when they filed a criminal complaint against Richard after Debtors filed their Chapter 7 bankruptcy petition, or whether the filing of a criminal complaint is excepted from the stay under 11 U.S.C. § 362(b)(1). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

## FACTS & PROCEDURAL HISTORY

Richard Wiard lives in Saint Regis, Montana, and is a contractor. He testified that he and David Rice were friends for 30 years, and that he had done several contracting jobs for Rices. David agreed and testified that he trusted Richard completely. On previous jobs, David testified, Richard would give David a bill when he finished a job and David paid him.

Richard testified that David contacted him in June of 2012, about installing a concrete slab for a garage at Rices' house on the Clark Fork River at Superior, Montana. Richard testified that the plans and location for the slab changed, and Rices asked for some tree removal to improve their view of the river which required additional tractor work. Richard testified that he asked for a $2,000 deposit, and that David said it should be $3,000 and paid him $3,000. David testified that Richard would not be pinned down on an estimate beyond guessing that the job would cost between $3,000 – $4,000. Richard testified that David wanted to know the total cost,

2

but Richard did not have the figures available to give him a bid.  He testified that he had told David earlier that a $5,000 estimate for a slab did not include prep work.

David and Richard did not enter into a written agreement for the slab work.  David testified that Richard told him on July 7, 2012, that there was a problem because the concrete ready mix company was requiring a 50 percent (50%) deposit, and Richard said he could not do the slab job without a deposit.  Ex. 1 is the receipt for the $3,000 receipt David gave Richard for the 24' by 24' slab, dated 7/11/12.

Richard testified that he gave David an invoice, Ex. 3 dated 7/20/12, to update Rices on the project.  Ex. 3 states that another $893 above the $3,000 is the balance due, for a subtotal of $3,893.  Richard testified that David paid the $893, and Richard signed Ex. 3.  Ex. 3 includes a breakdown for labor and materials, and a deposit in the amount of $1,140 for 2 loads of concrete which Richard testified the slab required.  Richard testified that he wanted to pour concrete early in the morning because of summer heat, and he had to refuse one delivery of concrete which showed up at one in the afternoon.

Gayla testified that the concrete pour finished, and on July 31, 2012, she asked Richard for a concrete receipt and for a total amount due.  Ex. 5 are invoices from Plains Ready Mix for the two concrete loads, dated July 31, 2013, in the total amount of $1,642.50, billed to Rich Wiard.  Ex. L is an invoice billed to Richard from Plains Ready Mix in the amount of $821.25, and a total amount of $1,642.50.  Ex. M is a separate invoice to Richard in the amount of $821.25.  Richard testified that he paid for the two loads by paying the driver, who wrote the check number on the invoices.  Ex. L has "CH # 2732" on the "Print Name" line above the signature line, and so does Ex. M.  Richard testified that he gave Rices the invoices which the

3

delivery driver gave him. Under questioning by the Court David testified that he did not receive bills directly from the concrete company.

Ex. 6 is a copy of a check written by Rices in the amount of $1,690 dated July 31, 2013. Richard testified that Ex. 6 was made out to him and he cashed that check. He admitted that he did not send Rices a breakdown how the $1,690 was applied.

David testified that Richard completed the slab job. Richard testified that when he returned to remove the concrete forms David came out and accused Richard of a "ripoff" for overcharging Rices for the concrete. Richard testified that he thought David was joking. He finished the concrete forms and left.

David testified that he had paid one of Richard's workers for prep work and cutting trees down, but the worker disappeared with the money. David complained that the receipts from the concrete company did not include Rices' $3,000 deposit and he asked Richard about it, but he was not satisfied with Richard's answer.

On cross examination Richard testified that he never gave Rices a final receipt for the job. In total, Richard testified that he received $5,583 from the Rices for a job which was worth between $6,000 to $6,500, so he does not feel that he overcharged. David testified that the total bill he paid for the job was approximately $5,500.

Rices sued Richard in Mineral County Justice Court by filing a complaint on August 13, 2012, Case No. SM-12-6. Ex. C is the complaint which alleges Richard was indebted to Rices in the amount of $1,188 for overcharging for concrete. Richard testified that he was suffering from health problems at the time, and asked for an extension. The justice court entered a default judgment against Richard on September 12, 2012, in the total amount of $1,273.

Ex. E is a letter dated October 11, 2012, from Rices to Richard demanding payment of the judgment, and demanding ten percent (10%) interest, a late payment fee of $100 per month, and claiming the right to garnish the wages of any member of his household, execute against his bank accounts and put a lien on his property and sell it.  Richard responded by sending Rices a letter, Ex. F, informing them that he is filing for Chapter 7 bankruptcy, and that they should send any future statements to his attorney at Geranios Law, PLLC, in Missoula.  David acknowledged receiving Ex. E.  Rices sent Richard another letter, Ex. G, referring to exceptions to discharge and that "you are still on the hook for the money that you owe us."

Rices requested a supplementary hearing in Case SM-12-6 to enquire about Richard's personal property to satisfy their judgment.  Ex. H is an order of the justice of the peace dated January 2, 2013, setting a supplementary hearing on January 30, 2013.

The day before the supplementary hearing, Debtors initiated this bankruptcy case by filing a petition on January 29, 2013.  Richard testified that he attended the January 30, 2013, justice court hearing and gave the court Ex. I, a notice of his bankruptcy filing, the case number, and the automatic stay of 11 U.S.C. § 362(a).  The justice of the peace dismissed the hearing.  Richard testified that the justice of the peace told Rices that they could take it to criminal court.

Gayla testified that they went to the county attorney on January 30, 2013, to file criminal charges against Richard, and the county attorney sent them to the sheriff to file a criminal complaint.  David testified that he went to the sheriff's department and filed a criminal complaint against Richard.  David stated that he gave the sheriff copies of his exhibits and told the sheriff that Richard had filed for bankruptcy.

Debtors filed their Schedules and Statement of Financial Affairs on February 1, 2013.

Schedule F lists Rices as creditors holding an unsecured nonpriority claim in the amount of $1,273.00 described as "Debt related to Concrete Work" from 2001, marked as "Disputed." The SOFA lists David Rice's small claim court case in Mineral County, No. SM-2012-006 which had been reduced to judgment.

The notice of commencement of the case, deadlines, and the automatic stay was sent to creditors, including Rices, on February 1, 2013. David Rice testified that he received the notice and was aware of the Debtors' bankruptcy and the automatic stay.

Richard testified that a few days later a patrolman served him with a criminal citation. Ex. J is the citation from the Mineral County Sheriff dated February 21, 2013, stating that Richard was charged with theft for an occurrence which took place on July 11, 2012.

The § 341(a) meeting of creditors was held on March 4, 2013. Rices attended the § 341 meeting. Richard testified that they demanded payment from him at the meeting, until the Trustee stopped them and adjourned the meeting. Other than the § 341(a) meeting, both sides agree that Rices did not contact Richard. David testified that, except for the criminal complaint, Rices did not send Debtors any letters and did not telephone them after the petition date.

Richard testified that he appeared at his initial hearing on the criminal charge in state court and pleaded not guilty. The court set a pretrial conference. Richard testified that he spoke with the county attorney once.

Debtors filed their Motion for sanctions against Rices for violation of the stay on April 12, 2013. Debtors' Motion alleges that David Rice sent Richard insulting letters prior to the bankruptcy petition date, and that after the petition date David went to the Sheriff's office and swore out a complaint accusing Richard of theft, which Debtors contend was for the purpose of

collecting the debt. Debtors contend that non-governmental individuals are not excepted from the stay under § 362(b)(1), and that Debtors are entitled to damages for emotional distress for the stress and humiliation caused by Rices' filing of their criminal complaint under § 362(k) and the Court's equitable powers under 11 U.S.C. § 105(a), plus punitive damages.

Rices filed their objection on April 29, 2013, contending that Richard engaged in deceptive practices and deceit in violation of Montana criminal law when he used Rices' deposit for some unknown purpose unrelated to their driveway project instead of making a deposit with the ready-mix company as Richard told them. Rices requested an award of their attorney fees.

The Trustee filed a no asset report. No complaints objecting to discharge or seeking exceptions from discharge were filed by the deadline[1]. A discharge of the Debtors was entered on May 6, 2013.

Richard testified that the county attorney said that the criminal charge was a civil matter not a criminal matter and dismissed the charge[2]. Ex. K is the justice court order dismissing the theft citation against Richard, dated May 6, 2013, pursuant to the motion of the state of Montana[3].

---

[1] David testified that even though he had researched exceptions from discharge, he had no idea what procedure was required to obtain an exception from discharge. He thought there would be a ruling excepting his debt from Richard's discharge after the § 341(a) meeting.

[2] Debtors' post trial brief includes a "Declaration of Marcia Boris," who is purported to be the Mineral County Attorney, which Debtors offer to correct what they contend is an inaccurate depiction of events. Debtors did not call the county attorney to testify at the hearing held on the instant contested matter, and Rices were not given the opportunity for cross examination. Hence, Marcia Boris' Declaration is not evidence, and it played no part in this Court's decision.

[3] David testified that the county attorney did not call him about the dismissal of the criminal complaint, and that he learned about the dismissal two days prior to the June 6 hearing on Debtors' Motion.

Richard testified that the criminal theft complaint filed by Rices caused him depression and stress, which exacerbated his heart condition, and that it also adversely affected his ability to work. He is still on medication. He testified that he could not accept employment opportunities in Elko, Nevada, and Colorado while the criminal charge was pending because he had to appear at the criminal hearings. He testified that he lives in Saint Regis, which is a small town, and that Rices' derogatory statements about him spread like wildfire and he stopped getting calls for local work. Richard testified that the matter affected his marriage and he is getting divorced. He had to put his house on the market for sale.

## DISCUSSION

Debtors contend that Rices changed their story from a civil matter to a criminal matter and that their entire purpose in both has been to collect their debt, and that Rices filed the criminal complaint instead of seeking exception or denial of Debtors' discharge in this Court. Therefore, Debtors argue that the exception from the stay of § 362(b)(1) does not apply to creditors or private conduct, and the situation is not similar to *In re Hartung*, 258 B.R. 210 (Bankr. D. Mont. 2000). Debtors repeat their request for damages for emotional distress in the form of stress and humiliation caused by Rices.

Rices respond that under § 362(b)(1) the stay does not apply to the commencement or continuation of a criminal action or proceeding, and that this contested matter is governed by this Court's decision in *Hartung* and the Ninth Circuit decision *In re Gruntz*, 202 F.3d 1074, 1085-87 (9th Cir. 2000), which expressly overruled a prior decision, *Hucke v. Oregon*, 992 F.2d 950 (9th Cir. 1993), which had held that a criminal proceeding was prohibited by the stay if the primary aim of the criminal decision was debt collection. Rices assert that they respected the stay and did

8

not take any action after the bankruptcy petition other than complaining to law enforcement, which is protected by § 362(b)(1).

Rices are correct that *Gruntz* and this Court's decision in *Hartung* control and require that Debtors' Motion for sanctions be denied under § 362(b)(1).

Debtors' filing of her bankruptcy petition on November 19, 2010, gave rise to an "automatic stay." 11 U.S.C. § 362(a). The Ninth Circuit has repeatedly reiterated the broad scope of the automatic stay as "one of the most important protections in bankruptcy law." *See In re Risner*, 317 B.R. 830, 835 (Bankr. D. Idaho 2004), quoting *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1214-15 (9th Cir. 2002). The Ninth Circuit construed the automatic stay in *Gruntz*, 202 F.3d at 1081-82:

> The automatic stay is self-executing, effective upon the filing of the bankruptcy petition. *See* 11 U.S.C. § 362(a); *The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp.* (*In re The Minoco Group of Companies*), 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

A party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d, 1178, 1191 (9th Cir. 2003), *citing Pinckstaff v. United States*, 974 F.2d 113, 115 (9th Cir. 1992). Further, "once a creditor or actor learns or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter are 'willful' within the contemplation of § 362([k])." *Risner*, 317 B.R. at 835, citing *Leetien & Adler*, 309 F.3d at 1215; *In re Forty-Five Fifty-Five, Inc.*, 111 B.R. 920, 923 (Bankr. D. Mont. 1990).

However, the commencement of a case does not operate as a stay under § 362(a) "of the commencement or continuation of a criminal action or proceeding against the debtor." § 362(b)(1).

9

*Hartung*, 258 B.R. at 213. This Court described the *Gruntz* holding that "the automatic stay does not apply to criminal proceedings, even if the debtor asserts that the underlying purpose of the criminal proceeding is simple debt collection." *Hartung*, 258 B.R. at 213, citing *Gruntz*, 202 F.3d at 1085-87 (overruling *Hucke v. Oregon*, 992 F.2d 950 (9th Cir. 1993). Debtors' contention that Rices changed their story and their goal was to collect their debt was rejected by the Ninth Circuit in *Gruntz*, and by this Court in *Hartung*.

In 2012 the Ninth Circuit Bankruptcy Appellate Panel ("BAP") discussed the analysis in *Gruntz* at length. *In re Nash*, 464 B.R. 874, 882-85 (9th Cir. BAP 2012). The BAP wrote that *Gruntz* "represents a strong policy statement commanding noninterference by the bankruptcy courts in matters of the state criminal justice system." *Nash*, 464 B.R. at 884. The BAP concluded that the "strong policy expressed in *Gruntz* advises against any interference by the bankruptcy court in the decisions of state prosecutors to pursue criminal charges . . . ." *Id.* at 885.

Debtors agree that the county attorney was not stayed from filing the criminal complaint, but they request sanctions against Rices for willful violation of the stay by initiating their criminal complaint. In *Hartung* the debtor sought a preliminary injunction against prosecution for writing bad checks, arguing that the referral of a bad check complaint against debtor by County Market in Helena violated the automatic stay. *Id.* at 212. This Court rejected that argument, agreeing with the sound reasoning of the Third Circuit decision *In the Matter of Davis*, 691 F.2d 176 (3rd Cir. 1982), explaining:

> Under Debtors' argument, criminal prosecutors would be precluded from obtaining any evidence of criminal wrongdoing from potential creditors after a debtor files a bankruptcy petition. For example, if a debtor were to burglarize a store and then immediately file for protection under the Bankruptcy Code, the owner of the store would be in violation of the automatic stay if he or she reported the burglary and then subsequently identified the burglar/debtor. Such actions on behalf of the owner would, in all likelihood, lead to the prosecution of the burglar/debtor and ultimately,

10

> a sentence which could potentially include restitution. The protections afforded by § 362(a) are not so broad as to forestall a creditor's right to report a crime. Indeed, citizens have an obligation to report crimes in order to protect society and to maintain the integrity of our criminal justice system. Once a crime is reported, the county attorney's office then makes an independent decision as to whether criminal proceedings are warranted based upon the facts as presented. The result urged by Debtors would impermissibly hinder prosecutors and interfere with a State's right to enforce its criminal statutes.

258 B.R. at 214-15.

In this Court's view Rices, like County Market in *Hartung*, "did nothing more than fulfill its societal obligation to report a crime to the proper authorities . . . . Simply put, 'Bankruptcy courts were not created as a haven for criminals.'" 258 B.R. at 215, quoting *Gruntz* (other citation omitted). None of Rices' conduct prior to the filing of Debtors' Chapter 7 petition can be considered in violation of the stay. Other than Rices' report of the alleged theft to the sheriff and/or county attorney, no evidence exists in the record that Rices contacted the Debtors in any fashion, other than the § 341(a) meeting of creditors which is specifically provided for under the Code. The BAP decision in *Nash* emphasizes that the policy statement in *Gruntz* which this Court followed in *Hartung* remains the policy in the Ninth Circuit.

Only an "honest but unfortunate" debtor is entitled to a "fresh start" under the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As in *Gruntz* and *Hartung*, "this is a chronicle of crime and punishment and the automatic stay does not apply to prevent the course of events which have transpired." *Hartung*, 258 B.R. at 215. Debtors in the instant case have received a discharge. Rices failed to seek exception of their debt from Richard's discharge, and the criminal complaint against Richard was dismissed. The exception of § 362(b)(1) requires that Debtors' Motion for sanctions against Rices be denied.

11

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a).

2. Debtors' Motion for Sanctions for Violation of the Automatic Stay against Rices is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Rices' report to the sheriff and/or county attorney of criminal theft by the Debtor Richard Wiard is excepted from the automatic stay under 11 U.S.C. § 362(b)(1).

**IT IS ORDERED** a separate Order will be entered in the above-captioned Chapter 7 case denying Debtors' Motion for Sanctions for Violation of the Automatic Stay (Dkt. 14).

BY THE COURT

*Ralph B. Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana